# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES GLASS, JR.,                                  :        Civil No. 3:23-cv-182
                                                   :
        Plaintiff                              :        (Judge Mariani)
                                                   :
    v.                                       :
                                                   :
WARDEN GREGORY BRIGGS, JILL                        :
CUFFARO, STEPHANIE DIETZ,                           :
TERRI OZOG,                                         :
                                                   :
        Defendants                             :

**FILED**
**SCRANTON**

JAN 2 4 2024

Per_____
DEPUTY CLERK

## MEMORANDUM

      Plaintiff, James Glass ("Glass"), a former inmate housed at the Dauphin County

Prison, in Harrisburg, Pennsylvania[1], filed the instant action pursuant to 42 U.S.C. § 1983

alleging that Defendants violated his First, Fifth, and Eighth Amendment rights. (Doc. 1).

The matter is proceeding via a second amended complaint. (Doc. 47). Named as

Defendants are Gregory Briggs, Jill Cuffaro, Terri Ozog (collectively, the "County

Defendants"), and Stephanie Dietz. Before the Court are the County Defendants' motions

(Docs. 52, 73) to dismiss. Pursuant to Federal Rule of Civil Procedure 12(d), the motions

will be treated as ones for summary judgment, and disposed of as provided in Rule 56, only

with respect to the issue of exhaustion of administrative remedies.[2] The remaining claims

---

[1]     Glass has been released from custody. (*See* Doc. 70).

[2]     On October 18, 2023 and January 2, 2024, the Court issued Orders apprising the parties that
the motions to dismiss would be treated as ones for summary judgment with respect to the issue of
exhaustion of administrative remedies. (Docs. 60, 77). Because Defendants raised the issue of exhaustion

will be addressed under Rule 12(b).  For the reasons set forth below, the Court will grant each motion.

## I.     Allegations of the Second Amended Complaint

At all relevant times, Glass was housed as a pretrial detainee at the Dauphin County Prison.  (Doc. 47).  He alleges that the events giving rise to his claims occurred from November 29, 2022 through August 7, 2023.  (*Id.* at pp. 4-5).  Specifically, Glass alleges that "Warden Gregory Briggs enforces that (pretrial detainees) remain in cells 23½ [hours] every day and weekends only allowed 3 hrs a week out of cell for 1 hr."  (*Id.* at p. 5).  He further asserts that the prison beds are unsafe.  (*Id.*).  Lastly, Glass alleges that on December 22, 2022, grievance forms were not available to inmates.  (*Id.* at pp. 2-4).  He contends that he suffered a hand injury and psychological distress.  (*Id.* at p. 5).

## II.    Rule 56 Motion

### A.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

---

of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Docs. 60, 77).

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## B.     Discussion

Defendants first argue that Glass failed to properly exhaust his grievances in the prison's administrative review process prior to proceeding to federal court. (Doc. 53, pp. 6-8; Doc. 74, pp. 9-13). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

4

prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

5

The Court takes judicial notice of Dauphin County Prison's grievance procedures.[3]

This Court has explained the grievance procedure as follows:

> The grievance appeal process that Dauphin County Prison inmates are
> required to follow, as set forth in the Inmate Handbook, involves four (4)
> steps: (1) the submission of a grievance for review and determination by the
> Warden; (2) an appeal of any decision to the Chairman of the Dauphin
> County Prison Board of Inspectors; (3) an appeal of the Chairman's decision
> to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from
> the Prison Board's decision to the Dauphin County Solicitor.

*Sawyers v. Brown*, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2014) (granting summary

judgment); *see also* Docs. 52-2, 73-2, 74-2, 78-1, Affidavits of Gregory Briggs.

The uncontroverted evidence reveals that, while Glass started the grievance process

concerning the issues raised in his complaint, he failed to finish the grievance process.

(*See* Doc. 78-1).  In his opposition briefs, Glass states that he filed his first grievance on or

about December 22, 2022 (which he claims was a "fake grievance"), he filed his second

grievance on January 18, 2023, and he filed his third grievance on February 5, 2023.  (Doc.

71, p. 2; Doc. 75, p. 1).  Glass initiated this action on January 18, 2023.[4]  Glass cannot

possibly have exhausted his administrative remedies, as he is required to do by 42 U.S.C. §

---

[3]   Courts in the Third Circuit have held that a court may take judicial notice of dockets or other
court opinions. *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the
state court proceedings insofar as they are relevant.").

[4]   Although the docket states that the complaint was filed on February 2, 2023, this is the date it
was received by the Court.  Under the prisoner mailbox rule, the complaint is deemed filed when Glass
handed it to prison officials for mailing, which was on January 18, 2023. *See Pabon v. Mahanoy*, 654 F.3d
385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed
on the date it is given to prison officials for mailing.").

1997e, before the filing of his complaint in federal court given that his second grievance and the initiation of this civil action occurred on the same date, and his third grievance was filed after he initiated this action in federal court.

To the extent that Glass submitted a grievance to the appropriate official and did not receive a response, the procedure contemplates several tiers of review. The grievance review system is not exhausted when an inmate files a grievance, and then takes no other action through established channels, when a grievance is not resolved to his satisfaction. Glass' next step would have been to appeal the Warden's decision, or lack of one, to the Chairman of the Dauphin County Prison Board of Inspectors. Glass failed to do so before proceeding to federal court. (*See* Doc. 78-1). It is clear that Glass simply failed to properly exhaust administrative remedies. The failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims. Thus, Glass has sustained a procedural default.

An untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Spruill*, 372 F.3d at 230. It is undisputed that Glass failed to follow the Dauphin County Prison's four-step grievance system and failed to properly exhaust his administrative remedies. The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford*, 548 U.S.

at 90-93.  It is well-settled that administrative remedies must be exhausted *prior* to the

initiation of suit.  *Booth v. Churner*, 532 U.S. 731, 738 (2001) ("The 'available' 'remed[y]'

must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also*

*Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A]

prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively

available to an inmate, preventing a timely pursuit of the prison grievance process.  *See,*

*e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a

prisoner exhausts his administrative remedies as soon as the prison fails to respond to a

properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview*

*SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's

administrative remedies unavailable when they failed to timely respond to his grievance and

ignored his follow-up requests for a decision).  The record simply does not support a finding

that the administrative process was unavailable to Glass.  To the contrary, it establishes that

Glass had full and ready access to the administrative remedy process.

In light of the undisputed facts and relevant evidence of record, the Court concludes

that Glass has failed to produce any evidence to overcome Defendants' summary judgment

motion and cannot argue against summary judgment by merely relying on unsupported

assertions.  Under Rule 56, Glass was required to go beyond the pleadings with affidavits or

the like in order to establish the existence of a genuine dispute of material fact.  *See Celotex*

*Corp.*, 477 U.S. at 324.  Because he has failed to do so, the Court concludes that Glass has

not properly exhausted the claims in this action, and Defendants are entitled to an entry of

summary judgment in their favor.  Even if Glass properly exhausted his claims, they would

be subject to dismissal on the merits, as discussed below.

## III.   Rule 12(b)(6) Motion

### A.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop.

Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

B.    Discussion

1.  **Lack of Personal Involvement**

Defendants seek dismissal of the second amended complaint based on a lack of

personal involvement.   Individual liability will be imposed under Section 1983 only if the

state actor played an "affirmative part" in the alleged misconduct.   *See Evancho v. Fisher*,

423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1998)).   Liability "cannot be predicated solely on the operation of *respondeat superior*."

*Id.*  In other words, defendants in Section 1983 civil rights actions "must have personal

involvement in the alleged wrongs...shown through allegations of personal direction or of

actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003);

*Rode*, 845 F.2d at 1207-08.   A plaintiff must establish the particulars of conduct, time, place,

and the person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.   When

a plaintiff merely hypothesizes that an individual defendant may have had knowledge of, or

personal involvement in, the deprivation of his or her rights, individual liability will not follow.

*Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Defendant Ozog is not named or identified in the body of the second amended

complaint.  (*See* Doc. 47).   Rather, her name only appears in the section listing each named

Defendant.  (*Id.* at p. 2).   The only reference to Defendant Cuffaro appears in the claim for

relief, where Glass asserts that she "should never be able to proceed in [the] grievance

process." (*Id.* at p. 5).  There is not a single allegation against Defendants Cuffaro and Ozog in the body of the second amended complaint.  Glass fails to include allegations indicating that Defendants Ozog and Cuffaro participated in the alleged wrongs through factual allegations of personal direction or of actual knowledge and acquiescence.

Glass identifies Defendant Briggs as the Warden of the Dauphin County Prison, and Cuffaro as the Director of Treatment.  (*Id.* at p. 2).  Any attempt by Glass to hold these Defendants liable for the actions of their subordinates is essentially an assertion of respondeat superior liability which seeks to hold them liable based on their supervisory roles.  This ground of constitutional liability has been squarely rejected by the courts.  *See Rode*, 845 F.2d at 1207.

Glass also alleges that Defendant Briggs, in his role as Warden, enforces a prison policy regarding the placement of pretrial detainees in cells.  (*Id.* at p. 5).  Glass has not set forth any other allegations against Defendant Briggs in the second amended complaint.  He has not sufficiently connected his allegations to Defendant Briggs' conduct to establish Briggs' personal involvement in the alleged wrong.  Particularly, Glass does not allege well-pleaded facts showing that Defendant Briggs directly violated any rules or knowingly acquiesced in such conduct.  Instead, Glass only levels a conclusory allegation that Briggs is responsible for a prison policy relating to pretrial detainees.  A plaintiff cannot make a showing of personal involvement simply where a supervisory defendant is "in charge of [the institution] that allowed [the alleged violation] to happen."  *Saisi v. Murray*, 822 F. App'x 47,

48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  The Court is unable to draw the reasonable inference that Defendant Briggs is liable as a policymaker under § 1983, or that he was personally involved in the alleged violation of Glass' constitutional rights.  *See, e.g., Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (defendants, in their supervisory roles, may be liable if they "established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm") (second alteration in original) (quotation omitted).  Moreover, Glass has failed to allege facts that rise to the level of a constitutional violation.

To the extent that Glass seeks to hold Defendants Briggs, Cuffaro, and Ozog liable based upon their roles in reviewing grievances, this claim fails.  The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992).  Thus, any claims against Defendant Briggs, Cuffaro, and Ozog that are premised on their responses to a grievance must fail because dissatisfaction with a response to an inmate's grievance does not support a constitutional claim.  *See Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

The Court finds that Glass' federal constitutional claims against the County Defendants fail for want of personal involvement and they are entitled to dismissal from this action.

### 2. Eighth Amendment Claim[5]

Glass appears to argue that the prison policy regarding confinement in inmate cells, and the conditions of the prison beds, violate the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 47). Not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, a condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The facts alleged in Glass' second amended complaint fail to meet this standard.

First, Glass does not allege that he is denied the opportunity for recreation. He asserts that he is allowed out of his cell three hours a week for one hour at a time. (Doc. 47, p. pp. 4-5). He contends that this amount of exercise is insufficient and seeks "more hrs out of cell for pretrial detainees." (*Id.* at p. 5). Regarding out of cell activity, courts have

---

[5]    As a pretrial detainee, Glass is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). However, courts apply the same standard to claims under the Fourteenth Amendment as under the Eighth Amendment. *Id.*

held that temporary denials of exercise may be constitutional.  *See May v. Baldwin*, 109

F.3d 557, 565 (9th Cir. 1997) (holding that Eighth Amendment was not violated when

inmate was denied outdoor exercise for 21 days); *Wishon v. Gammon*, 978 F.2d 446, 448-

49 (8th Cir.1992) (holding that Eighth Amendment was not violated when inmate in

protective segregation was allowed 45 minutes of out-of-cell exercise per week); *Anderson*

*v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 19858) (holding that Eighth Amendment was not

violated when inmates confined to special housing units were allowed one hour of outdoor

exercise per day); *Jordan v. Arnold*, 408 F.Supp. 869, 876-77 (M.D. Pa. 1976) (holding that

Eighth Amendment was not violated when inmates confined to special housing unit were

allowed two hours of exercise per week).

Second, Glass' allegation concerning the conditions of the prison beds does not

amount to a violation of the Eighth Amendment.  In similar situations, courts have held that

"[s]leeping in a bunk bed without guardrails does not violate contemporary standards of

decency, and thus, does not constitute cruel and unusual punishment." *Mikell v. Harry*,

2018 WL 501000, at *4 (M.D. Pa., Jan. 22, 2018) (citing *Brown v. Pastrana*, 446 F. App'x

270, 272 (11th Cir. 2011)).  And courts have consistently found that a lack of safety rails on

top bunks does not pose a risk of harm serious enough to support an Eighth Amendment

claim. *See, e.g., Patton v. Doran*, 2005 WL 2334367, at *2 (M.D. Pa. Sep. 20, 2005)

(holding that an inmate's allegation that prison officials acted with deliberate indifference by

failing to install safety rails on top bunks fails to state a claim because the condition did not

create a substantial risk of serious harm). *See also Vercusky v. Purdue*, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation.").

Moreover, Glass' second amended complaint suggests that he was subjected to these conditions for a short duration of time. The conditions of which Glass complains, while potentially uncomfortable, do not rise to the level of an Eighth Amendment violation. Glass has failed to adequately allege that he was subjected to inhumane conditions of confinement, *see Farmer v. Brennan*, 511 U.S. 825. 838 (1994), or that he was deprived of "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298; *see also Adderly v. Ferrier*, 419 F. App'x 135, 140 (3d Cir. 2011) (nonprecedential) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995)). The Court, therefore, will dismiss Glass' Eighth Amendment claim concerning his conditions of confinement.

### 3. First Amendment Claim

Glass seemingly alleges that the County Defendants violated his First Amendment right to free speech with respect to their actions regarding his grievances. (Doc. 47, p. 3).

He alleges that grievance forms were not available on December 22, 2022, and he believes

that "[t]he grievance forms should be in inmates['] view." (*Id.* at pp. 4-5).

The First Amendment forbids government action "abridging the freedom of speech,

or of the press; or the right of the people peaceably to assemble, and to petition the

Government for a redress of grievances." U.S. CONST. amend. I.  Glass' First Amendment

freedom of speech claim, based on the alleged failure to provide a grievance form, fails.

The law is well-settled that there is no constitutional right to a grievance procedure.  *See*

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977); *Heleva*

*v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007).  Thus, a prison official's "alleged

obstruction or misapplication of these procedures is not independently actionable."

*Freeman v. Dep't of Corr.*, 447 F. App'x 385, 387 (3d Cir. 2011); *see also See Wilson v.*

*Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997) (even if a prison official allegedly failed to

process the prisoner's grievances, no constitutional claim is stated).  And there is no

constitutional right for an inmate to receive grievance forms.  *See Ashford v. Hawkinberry*,

2016 WL 3156483, at *6 (W.D. Pa. Jun. 2, 2016) ("[I]t is well-established that inmates do not

have a constitutionally protected right to a prison grievance system.  Therefore, even if

Defendants 'denied Plaintiff the grievance process or obstructed the grievance procedure,

[that,] by itself, simply does not give rise to a cognizable independent claim.'"); *Freeman*,

447 F. App'x at 387.  Since Glass had no constitutional right to file a grievance in the first

place, the Court finds that Glass has not even stated a First Amendment claim against the County Defendants.  This claim will be dismissed.

### 4.  Fifth Amendment Claim

Glass alleges that he was denied his right to due process under the Fifth Amendment, but he fails to set forth any facts in support of this claim.  (Doc. 47, p. 3).  The Fifth Amendment provides, *inter alia*, that no person "shall be deprived of life, liberty, or property without due process of law."  U.S. CONST. amend. V.  However, the Fifth Amendment prohibits the federal government—not state or local actors—from depriving citizens of life, liberty, or property without due process of law.  *See Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (nonprecedential).  The Dauphin County Defendants are state actors, and the Fifth Amendment does not restrict their actions, as it only limits federal government action.  The Court will dismiss Glass' Fifth Amendment claim.

### 5.  Qualified Immunity

Even if Glass had stated colorable constitutional claims, the County Defendants, in their individual capacities, are entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim, Glass must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated from suit if their conduct did not

violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555

U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).  As stated, the Court finds that Glass failed to set forth any cognizable claims against Defendants and failed to establish the violation of a constitutional right.  Therefore, Defendants are protected from liability by qualified immunity.

### 6.  Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Since Glass' claims against the County Defendants are factually and legally flawed and he has previously been granted leave to amend, allowing leave to file a third amended complaint would be both futile and inequitable.  *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## IV.    Conclusion

The Court will grant the County Defendants' motions (Docs. 52, 73) in their entirety.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 24, 2024